UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>CHRISTOPHER M. BOUR ) | Case No. 2:13 CR 00036 RL-APR |

### GOVERNMENT SENTENCING MEMORANDUM

Defendant Christopher M. Bour stands before this Honorable Court for sentencing after admitting that, for a period of over a year, he repeatedly purchased and obtained custody and control of a female child aged four to eighteen months (hereafter referred to as Jane Doe) with knowledge that she would be videotaped engaging in sexually explicit conduct. DE # 32 (Superseding Indictment, Count 2). Defendant has also admitted to producing child pornography featuring six to nine-month-old Jane Doe on at least two occasions (Counts 3 and 4), producing child pornography of another child aged three to five (hereafter referred to as Jane Doe 2) (Count 5), and possessing pornography featuring these and many other prepubescent minor children being caused to engage in sexually explicit conduct (Count 8). *Id.*

The Presentence Report prepared in this case provides a detailed account of the egregious nature and circumstances of Defendant's offense and

1

relevant conduct. *See* DE # 59. Before he knew he was under investigation, Defendant invited a third party to watch him "play with a baby," and said he would be "tasting her and nutting in her mouth" and might "piss on her when [he was] done." *Id.*, para. 10(b).[1] Defendant admitted to the adult female third party that he began sexually abusing then eighteen-month-old child when she was just four months old, and proclaimed: "It's the best sex i ever had." *Id.*, para. 10(c). Defendant told the woman that she "could taste [the victim] too" and described the toddler as a "great kisser." *Id.*

When interviewed by law enforcement after his arrest, Defendant claimed these statements were just "fantasy" and examples of him engaging in "role playing." *Id.* para. 10(f). Defendant adamantly denied *ever* having had sexual contact with *any* minor. *Id.*

A week later, however, law enforcement recovered numerous depictions from Defendant's computer showing him sexually abusing Jane Doe. *Id.* para. 11-12. Thanks to Defendant's own sick desire to memorialize the events, law enforcement was able to witness Defendant sexually abusing Jane

---

[1] Defendant objects to the inclusion of these and other damning facts in the PSR, stating "there are already enough facts in the report." DE # 59, para. 10(b)(v). Congress has made clear, however, that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing a sentence." 18 U.S.C. § 3661.

Doe – a crime so incomprehensible that it must be seen to be believed. Not all of the videos Defendant produced were recovered, but the two that were found show Defendant engaging in sexual acts with the infant such as taking her pacifier out of her mouth and replacing it with his erect penis, licking the child's chest and genitalia, rubbing his penis up against the baby's naked body and attempting to penetrate her vagina, and ejaculating onto her face and body. *Id.* para. 19. In the few instances where Defendant's face is captured in the videos, he is seen grinning from ear to ear.

Federal law requires that Defendant receive a minimum sentence of 30 years' incarceration and a maximum sentence of life in prison on Count 2 – the charge of purchasing Jane Doe knowing that she would be depicted in child pornography – alone. 18 U.S.C. § 2251A(b). As for his production of child pornography charges in Counts 3 through 5, each carries a statutory mandatory minimum sentence of 15 years' incarceration and a maximum sentence of 30 years (for a combined total maximum of 90 years). 18 U.S.C. § 2251(a). And finally, Count 8 carries a maximum penalty of 20 years' incarceration because the minors depicted in the child pornography Defendant possessed were prepubescent or under the age of 12. *See* 18 U.S.C. § 2252(a)(4). Thus, the Court could sentence Defendant to a term of up to 110

years on his production and possession charges alone, and to life in prison for purchasing access to Jane Doe.

Not surprisingly given those harsh statutory penalties, the U.S. Sentencing Commission's guidelines (hereafter "the Guidelines"), as applied by Probation, recommend that Defendant be ordered to spend the rest of his life in prison. *See* DE # 59, para. 79. The Guidelines arrive at that recommendation after adding the following applicable enhancements to Defendant's various base offense levels:

- Four levels are added to the calculations for each of Counts 3, 4, 5, and 8 pursuant to Guideline § 2G2.1(b)(1)(A) because neither Jane Doe nor Jane Doe 2 had attained the age of 12;

- Two levels are added to the calculations for each of Counts 3 and 4 pursuant to Guideline § 2G2.1(b)(2)(A) because Defendant engaged in sexual acts with Jane Doe;

- Four levels are also added to the calculations for each of Counts 3 and 4 pursuant to Guideline § 2G2.1(b)(4) because the material Defendant produced portrayed him engaging in sadistic and masochistic conduct with Jane Doe;

- Two levels are added to the calculations for each of Counts 3, 4, 5, and 8 pursuant to Guideline § 2G2.1(b)(6)(B)(ii) because Defendant used a computer or interactive computer service to arrange his visits with Jane Doe; and

- Two levels are added to the calculation of Count 8 pursuant to Guideline § 2G2.1(b)(5) because Jane Doe was in Defendant's custody, care or supervisory control on at least one occasion.

4

Defendant's only objection to the application of the Guidelines is his claim that it is double counting to apply the sexual act enhancement *and* the sadomasochism enhancement, given that some of his conduct fits within both categories. The Seventh Circuit has held, however, that where each enhancement is applied to address *distinct aspects* of a defendant's conduct, it is not impermissible to count both. *See United States v. Schmeilski*, 408 F.3d 917, 919 (7th Cir. 2005). That is the case here, where some of the sexual acts in which Defendant engaged with the infant (e.g., licking her vagina) were not used as grounds for applying the sadomasochism enhancement. *See* DE # 59, para. 40, 49. In other words, had Defendant's conduct ended with performing fellatio on the infant or rubbing his penis against her body, he would be subject to the sexual act enhancement but not the sadomasochism enhancement. Defendant is thus deserving of the sadomasochism enhancement because his conduct went further and included acts likely to cause her pain. *See United States v. Myers*, 355 F.3d 1040, 1043-1044 (7th Cir. 2004).

Per § 3D1.2 of the Guidelines, Counts 3 through 5 are specifically excluded from the grouping rules. This is because each episode of the production of child pornography harms the victim in a separate and distinct fashion. *See United States v. Wise*, 447 F.3d 440 (5th Cir. 2006) ("The district

5

court's decision to treat Wise's production counts occurring on different days as separate harms was consonant with both the plain language of § 3D1.2 and the examples in the commentary[, as well as] the circuit courts that have addressed this and closely related issues.") (citing *United States v. Searle*, 65 Fed. Appx. 343, 346 (2d Cir.2003) (unpublished) (considering multiple counts of production of child pornography involving one victim and concluding that the district court properly declined to group the counts because the child victim "was harmed separately by the conduct embodied in each count of conviction"); *United States v. Big Medicine*, 73 F.3d 994, 997 (10th Cir.1995) (holding that the defendant's seventy-five instances of sexual contact with the same minor should not be grouped)). The Seventh Circuit reached the same conclusion in *United States v. Von Loh*, 417 F.3d 710, 714 (7th Cir. 2005), a statutory rape case in which it rejected the defendant's claims that his counts of engaging in sexual acts with the same minor on separate dates should be grouped together. Accordingly, Probation correctly arrived at a Combined Adjusted Offense Level of 50 for Defendant.

Properly added to that is a five-level further enhancement pursuant to Guideline § 4B1.1 because Defendant engaged in a pattern of activity (i.e., on at least two separate occasions) involving prohibited sexual conduct with

6

minor children. Thus, even after he is given maximum credit for acceptance of responsibility, Defendant nonetheless scores out under the Guidelines at Level 52 – *nine levels above the highest level* listed in the U.S. Sentencing Guidelines. Per Guideline Chapter 5, Part A, in those rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as a Level 43 (calling for a life sentence).

Defendant claims that this result shows "how illogical the [Guideline] calculation is for child sex offense cases." DE # 63, p. 4. There is nothing illogical about the Guidelines as applied here, however. Defendant would be facing an incrementally lower sentence had he not committed each of the following acts: (1) produced child pornography featuring Jane Doe, a child quite obviously under the age of 12; (2) produced child pornography featuring Jane Doe on multiple occasions; (3) engaged in sexual acts with Jane Doe in the first video recovered by law enforcement; (4) engaged in sexual acts with Jane Doe in the second recovered video; (5) engaged in sexual acts constituting sadistic and masochistic conduct with Jane Doe in the first video; (6) engaged in sexual acts constituting sadistic and masochistic conduct with Jane Doe in the second video; (7) produced child pornography featuring Jane Doe 2, another child obviously under age 12; (8) used a computer to arrange to meet

7

with Jane Doe; (9) used a computer to arrange to meet with Jane Doe 2; (10) arranged to take custody and control of Jane Doe at least once; and (11) engaged in a pattern of activity involving the sexual abuse of Jane Doe and Jane Doe 2 over the course of more than a year.

The only thing "illogical" before this Court is Defendant's request for the same sentence that would be <u>mandatory</u> in this case <u>even if he had engaged in **none** of the **eleven** aggravating acts described above</u>. Defendant fails to explain why he should receive the same sentence as a person who purchases a child knowing they will be used to produce child pornography but is caught (or stops themselves) before going through with the production. *See* 18 U.S.C. § 3553(a)(6) (requiring courts to impose sentences sufficient but not greater than necessary to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

Instead, Defendant asserts that the mandatory minimum sentence is appropriate for him despite his horrific crimes because a 30-year sentence would make him first eligible for release at age 65. According to Defendant, "[r]ecidivism rates for child molesters decrease[] over their lifespan." DE # 59, p. 4. The problem with relying on recidivism rates as an indicator of future risk is that those statistics depend on crimes being reported and

successfully prosecuted.  The vast majority of sex offenses committed against children go *unreported*, however.  *See* London, Bruck, Ceci and Schuman, *Disclosure of Child Sexual Abuse:  What Does the Research Tell Us About the Ways that Children Tell?*, Journal of Psychology, Public Policy, and Law, Vol. 11, No. 1, p. 194 (2005) (reviewing numerous studies and concluding "[t]he evidence indicates that the majority of abused children do not reveal abuse during childhood.").  If the recent Penn State scandal taught us anything it was that even educated adults who *witness* child sexual abuse, or *hear a first-person account of the abuse from a reputable source*, are sometimes reticent to report these very serious crimes.

One study aimed specifically at age and sexual recidivism offered the following explanation for the data upon which Defendant relies:

> The abrupt drop in recidivism for offenders released in their 60s and 70s might then reflect new variables beginning to act.  These might include loss of physical health and a significant reduction in effective time at risk due to mortality.  However, some reckoning must also be made with possible changes in the reporting rate.  Relatives' willingness to report offending by a grandparent is likely reduced by the thought that he will probably die soon.  Additionally, sexual misbehavior by the very old (for example in nursing homes) is often treated as a health problem ("poor old man, he can't help it") rather than as something to be dealt with by the criminal justice system.

Thornton, *Age and Sexual Recidivism: A Variable Connection*, Sexual Abuse: A Journal of Research and Treatment, Vol 18, No. 2, p. 12 (2006).  Thus, low

recidivism numbers based upon arrests and convictions are to be expected in all sex offense cases, and *especially* those involving older offenders.

Of course, that in no way proves that old people do not commit sex offenses; undersigned counsel, for example, has prosecuted two defendants near age 70 in the past five years. *See United States v. Wigglesworth*, 2:09 CR 184 JTM-APR (69 year-old former Catholic priest traveled from Indiana to Illinois to perform fellatio on teenage boy he met online in violation of 18 U.S.C. § 2422(b); *United States v. Zondor*, 2:11 CR 183 JVB-APR (69 year-old, who had previously engaged in a pattern of activity involving the sexual abuse or exploitation of at least two minor females, found to possess large quantity of child pornography in violation of U.S.C. § 2252(a)(4)(B)). Indeed, when compared with rapists and sexual sadists, pedophiles comprise 60% of all older offenders, indicating that pedophiles offend in their later years at a greater rate than other sexual offenders. *See* Ryan C.W. Hall & Richard C.W. Hall, *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues*, 82 Mayo Clinic Proc. 457, 458 (2007). As Judge Posner has explained:

> Statistical analysis of sex crimes has shown that *the best predictor of recidivism is not deportment at an interview but sexual interest in children*. R. Karl Hanson, Kelley E. Morton & Andrew J.R. Harris, "Sexual Offender Recidivism Risk: What We Know and What We Need

>to Know," 989 Annals of the N.Y. Academy of Sciences 154, 157 (2003) (tab.1).

*United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011) (emphasis added).

There can be no question that Defendant is sexually interested in children. If called to testify, co-defendant Hillard would explain that the second time she met Defendant in person, Jane Doe was present in her home. During that meeting, Defendant offered to pay Hillard for the opportunity to engage in sexual acts with Jane Doe. To put Hillard at ease, Defendant told her he had done the same thing before with a woman and her 6 year-old female child who live in Chicago, Illinois. Defendant also told Hillard that he *preferred* engaging in sexual acts with younger children because they "turn him on more" than adults.

Defendant's self-proclaimed sexual attraction to prepubescent children is independently proven by his sexual abuse of Jane Doe and the smile seen on his face in the videos he produced. His attraction to prepubescent children clearly lasted more than six months and also affected his behavior, causing him to seek out child pornography online, show it to others and to pay co-defendant Hillard cash for access to her child. The definition of pedophilia is a sexual attraction to prepubescent children that lasts more than six months and affects one's behavior. *See, A Profile of Pedophilia: Definition,*

11

*Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues*, Ryan C. W. Hall, Md, and Richard C. W. Hall, Md, PA, Mayo Clin. Proc. (April 2007). Case in point: Defendant himself proclaimed "It's the best sex i ever had" (referring to his encounters with Jane Doe). DE # 59, para. 10(c). His own counsel avers that viewing child pornography became "an addiction" for Defendant. DE # 63, p. 2. That, too, is borne out by the evidence; Defendant showed child pornography videos to an adult female acquaintance and urged her to seek out the material too. DE # 59, para. 10(a). This Court viewed a representative sample of the child pornography material found on Defendant's computer. That sample included videos much like those Defendant himself produced – videos that show prepubescent minor children being caused to engage in sexual acts, some likely to cause the children physical pain. "An offender's pornography and erotica collection is the single best indicator of what he wants to do." Kenneth V. Lanning, CHILD MOLESTERS: A BEHAVIORAL ANALYSIS FOR PROFESSIONALS INVESTIGATING THE SEXUAL EXPLOITATION OF CHILDREN, 107 (5TH ED. 2010).

And anyway, even if 65 year-old Defendant presents a lower future risk of sexually abusing children than his current-day self does, in the words of the

12

Eleventh Circuit: "[a] low risk is not the same as no risk. Adequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (en banc) (citing *United States v. Boyd*, 475 F.3d 875, 877-78 (7th Cir. 2007) (upholding a sentencing determination that the defendant's acts created a substantial risk of bodily injury to another person in part because "[d]angerousness is a function of the magnitude of the harm that will occur if danger materializes and the probability that it will materialize")).

That is especially true here, given Defendant's demonstrated *choice of victim*. Defendant has shown himself to have a propensity to sexually abuse victims who are *not old enough to speak*, much less to know that his conduct is immoral and illegal.[2] He also ensured that the only adult witness to his crimes, co-Defendant Hillard, was complicit in them by paying her money in exchange for giving him access to Jane Doe. And after he was caught, Defendant lied by denying that he had *ever* sexually abused a child. Were it

---

[2] While the government joins the defense in hoping that Jane Doe does not remember the abuse, *see* DE # 63, pp. 3-4, it also hopes the Court will not reward Defendant *because* he chose a victim who was developmentally incapable of reporting and perhaps even remembering his crimes. Defendant's shrewd choice of victim greatly lessened the likelihood that he would get caught.

not for the third party who came forward, these crimes – like most sex crimes – likely would not have been reported, much less prosecuted. And while Defendant's own sick desire to go back and watch the abuse again ended up serving as "the smoking gun" in this case, it is doubtful he would make that same mistake again if given a future opportunity to harm a child.

Having now witnessed Defendant's crimes for itself, this Court is uniquely positioned to appreciate the risk of danger Defendant poses to society. No amount of certificates, photographs, business plans or even character letters can overshadow the images of Defendant engaging in sexual acts with an innocent, helpless infant. This is one case where neither the seriousness of the offense conduct, nor the risk of danger the defendant poses to society, can be overstated.

> As the *Irey* court explained:
>
> [T]he more serious the criminal conduct is the greater the need for retribution and the longer the sentence should be. The seriousness of a crime varies directly with the harm it causes or threatens. It follows that the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime. As we have stated before, "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) (affirming as reasonable a 100-year sentence for an offender with no criminal history who sexually abused a 13-year-old girl and took photos of it).

*Id*. at 1206. "[T]he deterrence objective of sentencing is 'particularly

14

compelling in the child pornography context'" because "imposing a lighter sentence on one convicted of a child pornography offense 'tends to undermine the purpose of general deterrence and, in turn, tends to increase (in some palpable if unmeasurable way) the child pornography market.'" *Id*. at 1211 (quoting *United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008)).

The Seventh Circuit has urged district courts "to give respectful attention to Congress' view" that child pornography offenses are serious offenses deserving serious sanctions." *United States v. Grigg*, 442 F.3d 560, 564-565 (7th Cir. 2006). On appeal, the Seventh Circuit has consistently upheld "lengthy sentences for defendants involved in producing child pornography, even where the victims were not molested in the process." *United States v. Klug*, 670 F.3d 797, 800 (7th Cir. 2012). In *United States v. Noel*, 581 F.3d 490 (7th Cir. 2009), the court upheld an 80-year sentence where a defendant, while babysitting his stepbrother's child, abused his position of trust and took nude photos of the child while he slept. *See also United States v. Reibel*, 688 F.3d 868 (7th Cir. 2012) (per curium); *United States v. Boroczk*, 705 F.3d 616, 622-623 (7th Cir. 2013) (affirming as reasonable a 70-year sentence given in a production of child pornography case where the defendant will be first eligible for release from prison when he is 93

years old) (noting that the district court implicitly rejected the defendant's claim that "the risk of re-offending decreases with advancing age") *cert. denied*, 2013 U.S. LEXIS 6690 (Oct. 7, 2013); *United States v. Chapman*, 694 F.3d 908, 916 (7th Cir. 2012) (affirming as reasonable a 40-year sentence for a 46 year-old producer of images depicting children as young as 12 engaged in sexually explicit conduct).

Other federal circuit courts have likewise upheld lengthy sentences in production of child pornography cases. *See e.g., United States v. Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006) (upholding as reasonable a 140-year sentence for abusing and photographing three boys between the ages of 8 and 16 based on consecutive statutory maximums under 18 U.S.C. § 2251(e) and § 2252A(b)(1)); *United States v. Betcher*, 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding as reasonable a 750-year sentence for a first-time offender who had taken pornographic pictures of five 8- to 11-year-old girls, including two of his granddaughters); *United States v. Vowell*, 516 F.3d 503, 511-13 (6th Cir. 2008) (upholding as reasonable a 65-year sentence for a 40-year-old man who had sexual intercourse with his girlfriend's 8-year-old daughter while being videotaped by his girlfriend); *see also United States v. Paton*, 535 F.3d 829, 837-38 (8th Cir. 2008) (concluding that life sentence for five counts of

production of child pornography was not cruel and unusual punishment in violation of the Eighth Amendment).

For years prosecutors and law enforcement officials have been warning Congress, the courts and the public that the content of this material is growing more explicit, the sexual acts more violent, and the children depicted younger. This case, as shocking as it is, is simply one of many like it cropping up across the country. As District Judge John R. Adams explained in *United States v. Cunningham*, 680 F.Supp.2d 844 (N.D. Ohio, 2010): "There can be no keener revelation of a society's soul than the way in which it treats its children." *Id.* at 847 (quoting Nelson Mandela). Judge Adams continued, "[g]iven the recent statistics surrounding child pornography, we are living in a country that is losing its soul." *Id*.

## CONCLUSION

WHEREFORE, for the reasons explained herein and in Probation's Presentence Report, the government respectfully suggests that the only sentence sufficient but not greater than necessary to adequately address the factors set forth in 18 U.S.C. § 3553(a) is a lifetime term of incarceration (or its equivalent), followed by lifetime supervised release. That sentence is called for based upon the nature and circumstances of Defendant's offense

17

conduct and the seriousness of his crimes; it is necessary to promote respect for the law and just punishment for the offenses; it will afford adequate deterrence to future criminal conduct of this nature and protect the public from further crimes of Defendant; and it will avoid unwarranted sentence disparities with defendants with similar records who are found guilty of similar conduct.

On the subject of victim restitution, the government respectfully requests that the Court set a post-sentencing hearing to address victim restitution. *See* 18 U.S.C. § 3664(d)(5). The government is working with the Indiana Department of Child Services, who has custody of Jane Doe and Jane Doe 2, to have a guardian ad litem or responsible adult appointed to represent the children. It is the government's intention to establish a bank account for the children and to ask that Defendant (and co-defendant Hillard) be ordered to pay restitution into the account.[3] It is possible that members of the public, if so inclined, would also be able to contribute to the account. The account will be set up such that only the children can access the funds, but not until they are of legal age. The guardian ad litem/responsible adult will

---

[3] The parties are still working out the particulars, but Defendant has thus far expressed his willingness to pay a total of approximately $8,300 in restitution to Jane Doe, Jane Doe 2 and another victim (depicted in the child pornography he possessed) who is seeking restitution.

18

ensure that the children are informed of the account when appropriate and that its contents are wisely spent.

        Respectfully submitted,

        DAVID CAPP
        United States Attorney

By: */ S / Jill Rochelle Koster*
    JILL ROCHELLE KOSTER
    Assistant United States Attorney
    5400 Federal Plaza, Suite 1500
    Hammond, Indiana 46320
    (219) 937-5500

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to defense counsel of record.

                      By:   */ S /   Jill Rochelle Koster*
                              JILL ROCHELLE KOSTER
                              Assistant United States Attorney
                              5400 Federal Plaza, Suite 1500
                              Hammond, Indiana 46320
                              (219) 937-5500