IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF INDIANA

HAMMOND DIVISION

-FILED-

DEC 2 8 2016

ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT

| | | |
|---|---|---|
| Christopher Bour, | : | |
| Movant, | : | Civ. No._____ |
| v. | : | Crim. No 2:13-CR-36 |
| United States of America, | : | |
| Respondent. | : | |

BRIEF AND MEMORANDUM IN SUPPORT OF

MOVANT'S §2255 MOTION

Comes now, Christopher Bour, Movant in the above captioned cause and files this brief and memorandum in support of his §2255 Motion.

GROUND ONE

Counsel was ineffective for providing erroneous advice to Bour and inducing him to plead guilty.

Argument

Counsel Soliday made multitudinous errors when advising Bour, and these errors left Bour with no ability to understand the implications of pleading guilty; thus Bour's plea was not knowingly and intelligently made. "It is well established that a guilty plea is valid only if made voluntarily, knowingly, and intelligently." United States v. Frye 738 F.2d 196, 198 (7th Cir. 1984); Bousley v. United States, 523 US 614, 618

1

(1998). Review of the record may show that Bour's plea was voluntary. However, while the plea was voluntary, it was not knowingly and intelligently entered, at that time the choice to plea was based on the erroneous advice of counsel. The court must conduct an evidentiary hearing in conjunction with this §2255 Motion and then consider all of the relevant circumstances to determine if Bour was fully aware of the direct consequences of his plea, notice of the nature of the charges against him, and understanding of the law in relation to the facts. Warner v. Baenen, 712 F.3d 1090, 1102 (7th Cir. 2013). "In open court, the court must address the defendant personally and determine that the plea is voluntary and did not result from force, threats, or promises." United States v. Walker, 721 F.3d 828, 842 (7th Cir. 2014). It is important for the court to notice that Soliday insisted on personally questioning Bour during the plea hearing. This is because prior to the hearing he told Bour to simply answer "yes" the questions he asked. This fact alone negates the record's use to determine voluntariness. Simply following directions, Bour did as told and plead voluntarily, but not knowingly or intelligently.

    Ineffective assistance of counsel may prevent a defendant from entering a knowing and voluntary plea. Tollette v. Henderson, 411 US 258, 266-267 (1973). Where a guilty plea is entered upon the advice of counsel, the "voluntariness" of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. Hill v. Lockhart, 474 US 52, 56 (1985).

    Importantly, Counsel Soliday inappropriately applied

2

pressure on Bour to plead guilty, playing upon his lack of knowledge of the law and judicial procedures. "[A] guilty plea is admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." McCarthy v. United States, 394 US 459, 466 (1969). "[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." Id. The test utilized to determine the validity of Bour's guilty plea is whether the plea represented a voluntary and intelligent choice among the alternate courses of action. See North Carolina v. Alford, 400 US 25, 31 (1970).

Bour insisted several times that he wanted to proceed to trial, but each time Soliday used inappropriate pressure to talk him out of it, or eventually simply ignored Bour. His abandonment left Bour with the distinct message that if he did not plea (as Counsel insisted) that he was on his own. "Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect coverup of unconstitutionality." Boykin v. Alabama, 395 US 238, 243-244 (1969). Multiple times Soliday inappropriately applied pressure on Bour to plead. On one occasion he stated that the Government "has all the aces" and insisted that that the trial would embarrass Bour. On another occasion, he was told that the Government would never allow him to look at the evidence. And on yet another occasion, after the Government refused any plea agreement and Bour insisted then that he wanted to go to trial, Soliday stated that he should figure out what he was going to say on the stand to make him look good, and then just

3

stopped contacting Bour. At this abandonment Bour got the message, loud and clear, that he was on his own if he wanted to go to trial. These are exact conditions forbidden by the Supreme Court in Boykin.

Additionally, Soliday failed to seek a plea agreement with the US Attorney of the Northern District of Indiana, or the Executive US Attornies in Washington when efforts to deal with the local AUSA failed.

Counsel Soliday, to make matters worse, actually pressured Bour out of accepting the assistance of a private attorney that Bour's brother had hired. "A denial of the right to counsel of choice constitutes structural error, and a defendant claiming a denial of this right does not have to show prejudice." United States v. Gonzalez-Lopez, 548 US 140, 148-150 (2006). After Soliday became aware that Bour's family had hired a private attorney, he met with Bour to expressly and unabashedly dissuaded him from listening to this attorney's advice, and pressured Bour into not accepting the assistance of this attorney. Soliday badgered Bour as to WHY the family had hired a private attorney and wanted to know if Bour thought that he was not going a good enough job. Soliday had an ethical duty to step aside if Bour wanted to continue with the private attorney's assistance, but instead he improperly pressured Bour into declining this valuable assistance resource.

"Different attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument.

4

And the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial." Gonzalez-Lopez 165 Led2d 409, 420. The private attorney insisted that he would review all of the evidence with Bour (contrary to Soliday's assertions) and analyze what the government had. He'd then file pretrial motions and force the Government to prove at trial that they had enough evidence to convict. "The Sixth Amendment secures the right to assistance of counsel, it also includes the right to select, and be represented by, one's preferred attorney; thus trial courts must recognize a presumption in favor of a defendant's counsel of choice." Carlson v. Jess 526 F.3d 1018, 1024 (7th Cir. 2008) Citing Wheat v. United States, 486 US 153, 164 (1988). Had it not been for Soliday's improper pressure, Bour would have accepted the assistance of the counsel of his choosing who demonstrated a significantly more aggressive approach to these charges carrying a life sentence. "[I]t is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish [this] Sixth Amendment violation." Gonzalez-Lopez 165 Led2d at 419.

Counsel also failed to convey that the sentencing guidelines recommendation would result in a life sentence if Bour plead guilty. Soliday met Bour several days before the change of plea hearing and told him that his Guideline score would be in the fifties, but never explained what that meant. According to the United States Sentencing Guidelines Chapter 5, Part A, in rare cases a guideline score will be over 43, and thus becomes 43. Bour's score -even considering the acceptance of responsibility 3 point credit- was still equal

5

to the maximum guideline score of 43. Soliday never explained to Bour that a score that high had no sentencing "range" and would therefore result in a life sentence as Bour's Count II carried a statutory maximum of life.

Soliday's advice without mentioning the consequences of the guilty plea left Bour exposed to basically a mandatory life sentence with absolutely no benefit to his client. There was no reason to plead without an agreement, but the reasons NOT to plead without an agreement would include the fact that Bour would have retained many constitutional rights. Entering a plea must come with some benefit to the client, and there could have been no benefit. Competent counsel would only advise a defendant to plead guilty if it would be to his advantage. Bour would not have plead except for the opportunity to limit the possible penalty, but Soliday never informed him that with such a high guideline score there was no such opportunity. See North Carolina v. Alford, 400 US 25, 31 (1970).

Soliday could have had no tactic, save for the common belief that pleading will shield a client from the harshest penalty. In this case, the guideline score would have precluded such a belief so there was no tactic whatsoever. "Tactics are the essence of the conduct of litigation; much scope must be allowed to counsel, but if no reason is or can be given for a tactic, the label 'tactic' will not prevent it from being used as evidence of ineffective assistance of counsel." United States v. Zarnes 33 F.3d 1454, 1473 (7th Cir. 1994); Jackson v. Roth 24 F.3d 1002, 1004-05 (7th Cir. 1994): United States v. Booker, 981 F2d 289, 295 (7th Cir. 1992);

Wade v. Franzen, 678 F.2d 56, 58 (7th Cir. 1982); Kellog v. Scurr, 741 F.2d 1099, 1102 (8th Cir. 1984).

The Supreme Court "make[s] absolutely clear that the choice to plead guilty must be the Defendant's: it is he who must be informed of the consequences of his plea and what it is that he waives when he pleas." Boykin 295 US 238. With no advantage of pleading guilty, and Bour not understanding the consequences of the plea, it was in fact not knowing and intelligent.

Finally, Counsel Soliday failed to research and convey the the requirement of the law before Bour plead guilty. Soliday never researched and conveyed the fact that Count 2 clearly requires that "any offer described in such subsections [2251A(b)(2)] was communicated using means or facilities of interstate commerce or affecting interstate commerce" (Citing §2251A(c)(2)). Rather than challenge this, Soliday elicited false testimony from Bour to establish this particular element of §2251A, relieving the Government of the responsibility. Bour testified falsely because Soliday had told him if he accepted guilt he would get 30 years since this was his first offense. This is evidenced in the record when Soliday asked the Court "Would you like me to question him as we go through it?". (Plea Hearing Trans. Pg 2, ln 4). This question was asked before Bour even entered the Court. And just prior to Soliday establishing Bour's guilt to every element, the Court questioned Soliday "Mr. Soliday, you want to question your client?" Soliday responds "Just to make it easier". (Plea Hearing Trans. Pg 24 Ln 16-19). This was because Soliday had already instructed Bour to answer "yes" to

7

the questions as he asked them. During this exchange, Soliday then elicited false testimony from Bour since he never spoke over the phone or texted Hillard about "any offer" to purchase or otherwise obtain custody or control of Jane Doe 1 as required by §2251A(c)(2). The Defendant must possess an understanding of the "law in relation to the facts". McCarthy v. United States, 394 US at 466. Given the fact that Soliday failed to convey the requirement of §2251A(c)(2), Bour's plea cannot be knowing and intelligent as he was not advised of the law in relation to the facts in his case.

"[I]t is too late in the day to permit a guilty plea to be entered against a defendant solely on the consent of the defendant's agent -his lawyer." Henderson v. Morgan, 426 US 637, 650 (1976). In the instant case, Soliday was the one who consented to Bour's guilty plea. Soliday knew the elements that were needed for admission, however Bour did not. Soliday then went into the Court with the specific knowledge that Bour would answer "yes" to any questions asked -because that is what he told Bour to do. Soliday also told Bour that when the Court asked him if he were promised anything, that he has to tell them "no". And when asked if he was willing to plead guilty, he should say "yes", and when asked if he were happy with Counsel's advice, he should further say "yes". Bour was under the impression that he must make these exact answers so that he could receive his 30 year sentence, when in fact, Soliday was just covering his ass. Therefore Bour's guilty plea may have been voluntary but could not be considered knowing and intelligent. The Constitution requires three elements of a plea: that it be made knowingly, intelligently,

8

AND voluntarily. Bousley v. United States, 523 US at 618.

Bour was prejudiced by Soliday's erroneous advice that induced him to plead guilty. Specifically:

1.) Soliday exploited Bour's lack of knowledge of the law and pressured him to plead guilty,

2.) Soliday pressured Bour to reject a private attorney,

3.) Soliday failed to convey the impact of the sentencing guidelines upon Bour's sentence, and

4.) Soliday failed to convey the requirements of §2251A(c)(2).

Soliday further failed to solicit a plea agreement from the AUSA's superiors when negotiations with her failed. Bour was coerced into signing a plea without knowing the consequences of that plea, and fully expected a sentence of 30 years as that is what Soliday told Bour he would receive. Had Bour been properly advised by Soliday and not been induced to plead guilty, or not lured away from the private attorney, he would have gone to trial as there was absolutely no benefit to pleading guilty.

GROUND TWO
Counsel was ineffective for failing to negotiate a plea agreement in exchange for information pertinent to the investigation.

Argument

On February 22, 2013 Bour gave information pertinent to the investigation to Counsel Cattamanchi at his request. Counsel advised Bour that he would benefit from cooperating

with the Government in identifying the woman in the video. Bour trusted his attorney to arrange some sort of benefit for his assistance, but Cattamanchi simply conveyed Bour's testimony to the AUSA and never ensured that his client received any benefit.

    This blatant error prejudiced Bour in that he provided information resulting in the arrest of his co-defendant. This information could have been used to arrange a favorable plea agreement, but instead resulted in his co-defendant receiving the benefit (because she agreed to testify against HIM if needed), and Bour - who identified her received the statutory maximum on all counts served consecutively.

GROUND THREE

Counsel was ineffective for admitting aggravating factors, acting as a mere spectator, failing to call Dr. Fred S. Berlin or other expert witnesses at sentencing, and not raising an argument for downward departure due to a policy disagreement with the guidelines.

Argument

    The Sentencing Hearing transcripts are replete with examples that Counsel did not support his request for a 30 year sentence, and thus he acted as a mere spectator during sentencing. Soliday went as far as admitting aggravating factors which were to Bour's detriment. These factors were admitted in the sentencing memorandum and included emotional and physical harm to the victims (which is debatable -to unlikely- due to the age of the victims, and the absence of

documentation of harm). "The Government bears the burden of proving by a preponderance of the evidence that a sentencing enhancement is warranted". United States v Hines, 449 F.3d 808, 815 (7th Cir. 2006). Soliday ineffectively relieved the Government of this burden and likely resulted in Bour's statutory maximum sentence.

Soliday did no leg-work to prepare for the hearing and failed to associate the two studies with Bour's case.

Soliday failed to produce any expert testimony which could support the request for a 30 year sentence, even though such testimony could have been produced by an attorney working for a downward departure from the recommendation of the guidelines.

Dr. Fred S. Berlin, being an expert in sex offender rehabilitation - and available to testify at sentencing hearings, could have provided testimony and evidence to support a minimum sentence. But instead Soliday acted as a spectator at Sentencing, and failed to secure the services of any expert.

Soliday also failed to bring to the Court's attention the fact that other circuit courts expressed their disagreement with the child pornography guidelines. The Second Circuit in United States v. Dorvee, 616 F.3d 174 (2d Cir. 2010) explained that the guidelines in this area are not the product of the Sentencing Commission's empirical expertise, but rather reflects directions from Congress to punish these crimes more harshly. Id at 182. Dorvee also notes that §2G2.2, the guidelines for possession of child pornography, call for the application of multiple enhancements that apply in almost

11

every case, making inadequate distinctions between the worst offender and those who are less dangerous. Id at 186-87.

The Judge in United States v. Price, 775 F.3d 828 (7th Cir. 2013) exercised her discretion to consider the scholarly and judicial criticism for child pornography offenses. She acknowledged that most of the criticism of the child pornography guidelines is aimed at 2G2.2, but she concluded that 2G2.1, the guidelines for production of child pornography, presents some of the same problems. Both guidelines, she said, are vulnerable to the critique that they are not the product of the Sentencing Commission's empirical study and independent policy judgement. Id at 841.

Soliday failed to support his request for a 30 year sentence in this case. Not only would Dr. Berlin have supported this request by evidence and testimony that Bour was a good candidate for treatment, but also that he would have not been a threat to society upon release. In conjunction with Dr. Berlin's testimony, and several circuits disagreements with the product of the sentencing guidelines, Soliday could have convincingly supported the 30 year sentence that he requested.

Bour was prejudiced when he went into the sentencing hearing expecting a minimum sentence due to his lack of criminal history, and instead received the worst possible sentence that was statutorily possible because Soliday acted as a mere spectator.

GROUND FOUR

Bour's Sixth Amendment right to assistance of counsel at a critical stage of the criminal proceedings was violated.

Argument

On February 15, 2013 Bour was brought before Magistrate Judge Andrew P. Rodovich for an Initial Appearance. The record states that Bour was unrepresented by counsel at this critical stage. Bour's right to counsel attaches at the first appearance before a juridical officer at which he was told of the formal accusations against him and restrictions were imposed on his liberty. See Brewer v. Williams, 430 US 387, 398-399 (1977); Michigan v. Jackson, 475 US 625, 629, n.3 (1986).

The record indicates that the Government moved for detention and the Magistrate ordered Bour to be detained. Bour, not being represented by Counsel, was unable to challenge this restriction on his liberty. Even "the Colonists appreciated that if a defendant were forced to stand alone against the [government], his case was foredoomed" 73 Yale L.J. 1000, 1033-1034 (1964). "[T]oday's law enforcement machinery, involves critical confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality." United States v. Wade, 388 US 218, 224 (1967).

"[T]he accused is guaranteed that he need not stand alone against the [government] at any stage of the prosecution, formal or informal, in court or out, where Counsel's absence

13

might derogate from the accused's right to a fair trial." Wade, 388 US at 226. "The [Supreme C]ourt has uniformly found Constitutional error without any showing of prejudice when Counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding. See e.g. Geders v. United States, 425 US 80 (1976); Herring v. New York, 422 US 853 (1975); Brooks v. Tennessee, 406 US 605, 612-613 (1972); Hamilton v. Alabama, 386 US 52, 55 (1961); White v. Maryland, 373 US 59, 60 (1963)(per curiam); Ferguson v. Georgia, 365 US 570 (1961); William v. Kaiser, 323 US 471, 475-476 (1945)." United States v. Cronic, 466 US 648, n.25 (1984).

Bour's initial appearance was a critical stage when considering United States v. Gouveia, 467 US 180 (1984). The Supreme Court, for purposes of the right to counsel, pegged commencement to "the initiation of adversary judicial criminal proceedings - whether by way of formal charges, preliminary hearing, indictment, information or arraignment." id at 188. Gouveia names arraignment and the preliminary hearing as points in a judicial proceeding where a right to counsel attaches. A preliminary hearing is a critical stage, see Coleman v. Alabama, 399 US 1, 9-10 (1970), and an arraignment itself is a critical stage, See Hamilton 368 US at 54. Therefore, Bour's initial appearance is also considered a critical stage and his complete lack of representation violated his Sixth Amendment right.

*[signature]* 12-19-16
Christopher Bour 12631-027
USP Tucson
PO BOX 24550 Tucson, Arizona 85734

14